Yeah, sure. Our argument is fairly straightforward, as you can tell from the briefs. There's essentially two arguments, there's a procedural argument regarding the Northern District's local rules and what I guess, for lack of a better term, I'll call the disparity argument regarding the punishment imposed on Attorney Finn. With regard to the procedural arguments, this court's rules are fairly clear. The Northern District had a responsibility to scrupulously follow its own rules and any ambiguities in those rules are resolved against or in favor, I guess, of the attorney that is being disciplined. As far as what deference this court gives to the Northern District, in this case, interpretation of its own rules under Thallium, I submit that it's . . . DeNova Review, now I know Judge Smith, you dissented in Thallium and thought some deference had to be given to the Northern District, but I'm not even sure there's much ambiguity in the rules. The rules are very clear that in imposing attorney discipline, it is the presiding judge of a particular court that gets to impose discipline on lawyers appearing in front of their court. That's our position here, that it is up to the individual judges in the Northern District, in this case, to determine what, if any, discipline they want to impose upon attorneys appearing before them. I also make note that the local rules in the Northern District of Texas specifically talk about three-judge panel in case of reciprocal discipline, but only reciprocal discipline. There are two subsections of the particular local rules, both the criminal and the civil. Again, it's . . . obviously, I benefit a lot from when there's adversary counsel. We just have the letter from the panel. I feel lonely here. Yeah, but am I correct when I look at your notice of appeal? You're not appealing from Chief Judge Lynn's order on March 24, constituting a panel. You're not appealing from the full Northern District of Texas's order the next day, suspending Mr. Finn. That was a Judge Lynn order also, but . . . Well, it reads as the whole court or all members of the court. She does say acting for the court or something along those lines. Then there's an April order from the panel, so Chief Judge Lynn, to my reading, the whole Northern District, then the panel itself appointing Attorney Heiskell, but instead, the notice of appeal says you're appealing from the October ruling actually imposing discipline. Would you say that still comprehends your jurisdictional argument that her ruling, the Chief Judge's back in March constituting the panel, itself was void? I think I'm following the court's question. Unfortunately, I didn't file a notice of appeal, but yes, I mean, I think it is sort of one bucket, so to speak. Mr. Webster brought that up at the very end of the hearing. Correct. He said it's because the new rules, local rules, don't allow. And I don't understand what he was referring to the new local rules. I actually went and used the Wayback Machine last night. You would say no rule ever has allowed a three-judge panel. You know, I went back because I think there was some changes in the rules in 2004, 1994. I forget which one, but in any event, going back that far, the rules were the same. Presiding Judge decides on discipline for the attorneys appearing before him, but three-judge panel is allowed to impose reciprocal discipline. The one immediate question that comes to mind is, why wouldn't we maybe be able to affirm simply because how could there be prejudice that he got three judges instead of one? Well, and that's in the response that the panel filed to the court, and I mean, it's sort of a, I guess chicken and the egg isn't the right term, but there is prejudice because let's say, and I'm going to just use him, Judge Kincaid, because Judge Kincaid spoke favorably about Attorney Finn and his relationship with Attorney Finn. Let's suppose that Judge Kincaid wants Attorney Finn in his court. Attorney Finn has suffered prejudice because Judge Kincaid isn't on that panel, and it's up to Judge Kincaid to determine whether he wants Mr. Finn in his court or not. So in that sense— But in the 70 pages of dialogue, Mr. Finn is both apologizing and inviting what he calls guardrails. He's asking the panel— Guardrails, yes. Well, I understand that, and again, I don't want to speak for Judge Kincaid, but Judge Kincaid could put those guardrails and say, Finn, you're only appearing in my court if you do X, Y, and Z. I'm setting these guardrails for you, but Judge Kincaid doesn't have that opportunity because the Northern District didn't follow its own local rules. So in that sense, there is prejudice. I mean, I understand the concept that three seems better than one, but as it actually gets applied, it is prejudicial. In my memory, I mean, the panel seems to be less concerned—it's hard to see there would be another judge in the district objecting if I'm right that that second order of suspension came from all judges. But the focus of the three-panel judge was, what about prejudice to your clients? And as I read Mr. Finn's answer, it was a rhetorical one, seemed hubristic and sarcastic, which is, have you seen me in court, implying I'm going to win if I'm drunk or not? Well, and I— You remember Judge Pittman asks him, you remember Judge Pittman asks him, how can we protect your clients? Right. That is his rhetorical answer. And, you know, obviously, that's not to be condoned. But to circle back, I mean, I think the answer is, again, Judge Kincaid could say, how do I—you know, I know Mr. Finn's a good attorney when he's sober. I've seen Mr. Finn as a very good attorney sober, but, you know, I'm also concerned for his clients and the propriety of the court. So I believe Attorney Finn can practice in my court with X, Y, and Z in place, but Judge Kincaid doesn't get that opportunity because the Northern District doesn't follow its own rules. Yeah. So your lyrical rule, 57.8, requires— And that's the criminal, but there's a civil— Individual presiding judges. The only way to discipline is observed contempt, so-called hearing by that judge, discipline related to that judge's court. Is that—or am I overstating your position? Well, I don't think that it needs to be observable. I mean, for a contempt finding— Observed or aware. Right. Right. Yes. And then the individual judges, just as they decide mostly everything that goes on in their individual courts—different discovery rules, different procedural rules—get to decide who appears in front of them and gets to set whatever guardrails, if that's appropriate. And, you know, if the attorney disagrees with those guardrails, they could appeal that particular order or the Northern District can change its own rules. But until they change their own rules—and maybe this will prompt them to change their own rules because, obviously, they know how to do it in regard to reciprocal discipline—they are bound by those rules. And Judge Kincaid gets to decide who appears in his court, and Judge Lynn gets to decide who appears in her court, and if there are issues with those individual attorneys, set whatever, quote, guardrails need to be set for those attorneys. And I think this goes back to the rule of this court, that you've got to scrupulously apply the rules, and the rules seem very clear. I don't think there is any ambiguity. But you saw the letter response was, well, then what do we do about someone who wants to box the CSO? Maybe criminal even. That's not going to be observed by any judge. It's related to the judges as a court. It's not going to be observed, but— Which judge of the whole would be the one who has jurisdiction over things that aren't happening? Right? Things that affect the court as a court, CSOs. Well, the individual judge could still impose whatever discipline— The judge that the CSO Dunn went to? No, no. Any judge. Judge Lynn could say, you're not allowed to box the CSO on the 15th floor, and Judge Kincaid could be on the 16th floor and say, you know, you're not allowed to, and, you know, the result of it, or the Northern District can change its own rules. But it hasn't. At least up until now. We've got a discipline rule, Rule 46, almost identical. You can be disciplined, suspended for conduct unbecoming or violating any rule. But I don't see in rules like that, and I assume it's virtually identical across circuit and district judges, I don't see them speaking to what constitutes the court. Well, there is a definition of the court in the local rules also. Well, illuminate. It specifically limits it to one judge? The word court means the district judges of the United States District Court for the Northern District of Texas as a collective panel, and then the next definition is the term presiding judge means the judge whom the case is assigned. The word judge includes district judges and magistrate judges. And so the discipline rule is non-reciprocal discipline, talks about the presiding judge. And as I said, the definition of both the civil and the criminal local rules are identical as how they define court and judge. Okay. Well, go on with the authorities or whatever you were going to say. I've taken 10 minutes here. No. And that is really it. As I said, it's a very straightforward argument, you know, whether the Northern District means what it says in its local rules and it says the presiding judge. When it comes to reciprocal discipline, it talks about a three-judge panel. But there is certainly a distinction there, and there's got to be a reason for that distinction or one would think there was a reason for that distinction. Now is it better that a three-judge panel have disciplinary control outside reciprocal discipline? Probably. It makes sense to me. I mean, I've never been a judge, but it seems to me, you know, you can have only so many balls in the air at one time. So that makes better sense to me, but I didn't write the rules. And maybe when the rules are written, there was a Judge Kincaid who says, I'm not trusting Judge Lynn to decide who practices in my court. I mean, we don't know how the sausage was made, but we know what the rules say. And then if there are no questions on that, I'll just move quickly to the disparity argument. It's clear, I don't think there's any doubt even if somebody was sitting in that chair that it's the least restrictive sanction to deter the inappropriate behavior is sort of the standard we're working with. Now with that said, I will say I've learned never to put things in footnotes because Judge Godbee says I don't cite the standard of review, and it is in our brief, the standard of review. And I know we give a lot of deference to the type of sanction or the length of sanction imposed by the district court. I do take great, well, I do differ from Judge Godbee is treating this as a one year, and I say one year, it's actually one year and you can maybe get back in. But it is effectively, this started way back in March 25th, where Mr. Finn was sort of hearing with the babysitter. Now, I know Judge Godbee said Judge Finn recently appeared in his court for a sentencing hearing, but that was a case that was filed way before this, way before March 25th. In fact, I went back and looked yesterday, Mr. Finn was counsel of record of 23 cases filed since 2019, but only one filed since the discipline was imposed. I was looking at that order of suspension on the 25th, where does it require a chaperone? And just while I'm looking at it, it does read, first line, the undersigned, Chief Judge Lynn, on behalf of all judges, suspends Attorney David Finn. So first order is Chief Judge Lynn, second one is all judges, then it becomes the panel. Well, and I guess, you know, obviously we don't have Judge Lynn sitting here, you know, I don't know whether there was actually a meeting and a vote took place, so to speak, or it was her belief that she could act as Chief Judge, act on behalf of all the judges in the Northern District of Texas, just like the panel thought it could act for all the judges in the Northern District of Texas. Does it say chaperone? You have to read it. Mr. Ware, and I'd have to. Oh, that's all right. I can read. I didn't see. It's in one of the orders, and perhaps I cited the wrong order, but certainly his ability to appear in the Northern District is limited to appearing with Mr. Webster, and as I said, that is only . . . there's only been one new case filed since the discipline was imposed. So this is a lot more than a year, and the Eastern District picked this up as reciprocal discipline, and he's not allowed to practice at all in the Eastern District while all this gets sorted out. So I think it is a bit of a misnomer for Judge Godbee to say, well, he appeared in front of me for sentencing, so yeah, y'all are . . . we're all wet because it really is just a one-year suspension. This is a lot more serious than that. And so then that goes into the sort of the disparity of the punishment argument. I think Mr. Highschool recognized it, Mr. Webster talked about it in both letters and before the panel that, you know, I don't think there's any question about Judge . . . Mr. And so then the question becomes, you know, how do we get him to conform to his behavior? And then that really goes to addressing the alcohol issue rather than just saying, well, you can't practice for a year, two years, three years. It is setting guardrails, to use that term. And for that, you know, there's a little different than a lot of these cases where an attorney does something, for lack of a better term, unethical, lies to a court or takes money they shouldn't have taken, where you sort of have to . . . have to do something to bring that attorney in line with, I guess, his moral or ethical obligations to the court. In this case, I think we need to look at what the least restrictive sanction is to conform Mr. Finn's behavior to what we would expect from an attorney, and that really goes to addressing the underlying issue, the alcohol issue. You'd ask him with counsel at least a dozen times, what do you think we should do? And his answer, as I read it, is, I can't guarantee you I won't keep drinking. Well, and I . . . And then they cite that incident, and so then they're going to be sentencing hearings and right before the hearing, they get a call, I'm in the hospital. Well, I mean, I guess I'll say two things. I mean, I think any . . . you know, I'm thankfully not an alcoholic, but I've certainly known family members and clients. I mean, I think that is something that is drilled into you. I mean, you're an alcoholic for the rest of your life. I mean, you can never sincerely make a promise that you won't drink. But obviously, even Judge Godby's or the panel's decision allows for the idea that there is some monitoring system that can be set up. Judge Godby wants it to wait for a year plus the interim with Mr. Webster, but even Judge Godby acknowledges that. Otherwise, I mean, we would never let an alcoholic practice or, you know, somebody with an addiction practice, I mean, they just wouldn't be capable of being a lawyer. So, I get the court's concern, and don't get me wrong, and I get the panel's concern, and I get Judge Lynn's concern, and I get the court security's officer's concern. I mean, I get all that, but at the same point, you know, as I said, you know, there's . . . no client has complained. Judge . . . the attorneys have spoke, you know, very . . . a lot of praise for Judge . . . Mr. Finn when he's sober. And so, we need to figure out a way when you talk about the least restrictive sanction, and that's really the terminology we're dealing with that this court has set as the standard, to get him to conform to really not drinking, because if he conforms to not drinking, his behavior, I think . . . I said if somebody else was sitting there, I think we'd agree. If he conforms to not drinking, he conforms his behavior to what we would expect. And so, the question is, how do we . . . what's the least restrictive sanction to get him to conform his non-drinking? And I've offered several of those suggestions in the brief, and as I said, even the panel recognizes that that day may come, you know, a year from now, or two years from now, however you work the math. The court has no further questions. I've got my pen, and I will yield my time back to the court. Thank you. All right. Thank you, Mr. Broden. Your case and all of today's cases are under submission, and the court is in recess until 9 o'clock tomorrow.